IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOAN CONCOVICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-cv-0294-MJR-DGW |
| | ) | |
| AIR EVAC EMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

On February 5, 2015, Joan Concovich filed a class action complaint against Air Evac EMS, Inc., alleging that Air Evac violated the Illinois Consumer Fraud and Deceptive Trade Practices Act by offering Concovich and others enrollment in an empty membership plan. Air Evac, as its name suggests, is in the business of ferrying patients between area hospitals via helicopter, and as a part of that business it provides potential users access to its AirMedCare Network membership plan, whereby Air Evac promises not to collect fares charged for future transports from the actual plan member. Concovich signed up for Air Evac's membership plan and then needed helicopter transport from an Illinois hospital to a Missouri hospital in 2014; the bill for the transport was $37,711.07, with all but $150 paid by Concovich's insurance. Concovich's suit deals with the remainder of her bill: she alleges that Air Evac refused to delete the rest of her bill despite her membership in the AirMedCare plan; that the plan and its promise to not collect certain costs was illusory under Illinois law; and that, given the

consumer protection defects in the plan and her membership in it, her outstanding bill (like others in her purported class) should be completely "extinguished." Air Evac is of the view that Concovich's entire suit relates to Air Evac's prices and services and is therefore preempted by the Airline Deregulation Act. It has moved for summary judgment on that ground, and that motion is now before the Court for review.

Airline deregulation, along with many other types of deregulation, didn't come into vogue until the late 1970s. Prior to 1978, both federal and state forces exerted significant control over airline sales and services—the Federal Aviation Act of 1958 gave the Civil Aeronautics Board authority to regulate airfares and initiate administrative actions concerning deceptive trade practices, and by way of a savings clause permitted states to do the same. **Northwest, Inc. v. Ginsberg, 134 S. Ct. 1422, 1428 (2014).** All of that changed in 1978, when Congress determined that market forces would better press "efficiency, innovation, and low prices" in the airline realm, and to that end enacted the Airline Deregulation Act. **49 U.S.C. § 40101(a)(6) & (12).** The Act dismantled a great deal of federal airline price- and service-related regulation, and to make sure that States didn't undo all of that dismantling with more "regulation of their own," the Act included a preemption provision. **Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378-79 (1992).** In its current form, the preemption section bars States from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." **49 U.S.C. § 41713(b)(1).**

The preemption provision is broad, applying to enactment or enforcement efforts aimed directly at price, routes, or services, as well as efforts that have a "reference to"

2

those items or that would have a "significant impact" upon them. *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008). That said, the provision doesn't preempt every lawsuit against an airline: it does not reach most breach of contract actions, for those aren't really enforcement actions but are merely attempts to hold parties to a private agreement, nor does it extend to state actions that affect airline prices and services in a peripheral or tenuous manner. *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 224 & 232 (1995). The last carve-out is the most vague, but the reasons for the Act's preemption provision help to flesh it out—the Act was designed to stop state interference with an airline's efforts to freely contract in areas linked to prices, routes, or services, so actions that fall on the "peripheral" side of the divider (and aren't preempted) tend to be those involving laws of general application that merely "provide the backdrop for private ordering," as opposed to claims that try to use state law to pre-impose "particular terms of trade between parties to a transaction." *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 558 (7th Cir. 2012).

No one doubts that Air Evac is as an air carrier and that Concovich's claim, premised not on breach of contract but consumer protection law, counts as enforcement of law under the Act, so the question is whether the "claim[] at issue" in this case "either expressly refer[s]" to an airline's prices, routes, or services or would have a "significant economic effect" on them—and even if it does, whether the claim is so tenuously linked to prices, routes, or services that it falls on the non-preemption side of the line. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433-34 (7th Cir. 1996). This case involves a carrier's membership plan, and the

3

Supreme Court has twice considered whether claims concerning those types of plans are sufficiently "related to" prices or services to be preempted under the Act. In the first case, *American Airlines, Inc. v. Wolens*, **513 U.S. at 219**, the Supreme Court ruled that membership-related claims brought under the Illinois Consumer Fraud and Deceptive Business Practices Act were preempted, as the frequent flyer program at issue provided mileage credits and perks that could be used to waive ticket fares and access certain flights and upgrades, and thus the claims were linked to airline prices or services. In the second case, *Northwest, Inc. v. Ginsberg*, **134 S. Ct. at 1422**, the Supreme Court held that a state implied contract claim concerning Northwest's membership program was related to airline prices and services and was thus preempted because the plaintiff sought restoration of his membership, which like the plan in *Wolens* could be used to obtain free or reduced fares and other perks.

Air Evac insists that Concovich's claim relates to its prices and services, but the latter is a bit of a stretch—"services" means those contractual arrangements between the airline and the passenger that are tied to the air service bargain, *Travel All Over the World*, **73 F.3d at 1433**, and a separate membership agreement that deals largely with payment and doesn't offer some kind of flight perk seems to have little to do with an airline's carrier operations. There's no need for the Court to answer the "service" question, though, as Concovich's complaint is plainly linked to Air Evac's prices. Concovich's claim concerns a membership plan that she says should have cancelled the remainder of her fare, and based on the consumer law defects in that plan and her membership in it she is suing to have her outstanding fare "extinguished," among other

4

relief.  That's a stone's throw away from the claims found preempted in *Ginsberg* and *Wolens*—the membership plans at issue in those cases could be used to "eliminate[] or reduce[]" the price of a ticket, *Ginsberg*, **134 S. Ct. at 1431**, so the claims concerning the plan were related to price or had an impact on price, and were therefore preempted.  The same can be said of the membership plan Concovich is targeting in her consumer protection claim here, so preemption would typically follow.

      The Court says "typically" because claims aren't preempted when the state law or enforcement action has only a tenuous link to prices or services.  *Morales*, **504 U.S. at 390.**  Concovich says that her claim, if litigated to its natural end, is just that type of action—according to her, Air Evac doesn't compete with other medical evacuation companies to set the rate for its transport services, but instead submits its charges to insurers and lets the insurers dictate what charges they will tolerate, so this action has little to do with the setting of Air Evac's rates.  That argument mistakes the breadth of preemption for airline "prices"—preemption doesn't apply only when a law directly sets a rate, but also when a non-contract claim concerns the elimination of a rate or a membership plan that reduces part of a rate, as discounts naturally impact rates in a manner sufficient to trigger preemption.  That point was recognized by the Supreme Court in *Wolens* and hammered home by a number of decisions since.  *E.g., Ginsberg*, **134 S. Ct. at 1431**; *Sanchez v. Aerovias De Mexico, S.A. De C.V.*, **590 F.3d 1027, 1030 (9th Cir. 2010)**; *Data Mfg., Inc. v. United Parcel Serv., Inc.*, **557 F.3d 849, 852 (8th Cir. 2009)**; *United Airlines, Inc. v. Mesa Airlines, Inc.*, **219 F.3d 605, 608 (7th Cir. 2000)**; *Statland v. Am. Airlines, Inc.*, **998 F.2d 539, 541-42 (7th Cir. 1993).**  Under that lens, the claim here

doesn't have a mere tangential relationship to price: this case isn't about discovery requests which made no reference to price but might occasion the disclosure of some documents touching on it, as in *Nationwide Freight Systems, Inc. v. Illinois Commerce Com'n*, **784 F.3d 367, 375-76 (7th Cir. 2015)**, but instead is about Air Evac's membership plan and Concovich's desire to "extinguish[]" part of her fare based on it.

Concovich also maintains that her claim has only a tenuous relationship to price because Air Evac's membership plan qualifies as an insurance plan in some states, and those states regulate that plan through their insurance law. It's an open question whether that kind of state enforcement would be preempted under the Act: the analysis would turn in large part on whether insurance law looks more like background laws that set the "basic rules for a civil society"—like gambling laws, prostitution laws, wage laws, and so on—or whether insurance law tries to paternalistically pre-impose "particular terms of trade between parties to a transaction." *S.C. Johnson*, **697 F.3d at 558.** That question isn't before the Court here, though, as Concovich isn't bringing an insurance law claim, but instead is proceeding under consumer protection law. A claim premised on those types of statutes tends to fall on the paternalistic side of the line, so when the claim relates to price, as this one does, the claim is preempted. *Wolens*, **513 U.S. at 227-28**; *S.C. Johnson*, **697 F.3d at 559**; *Travel All Over the World*, **73 F.3d at 1435.**

While preemption blocks Concovich's claim under the Illinois consumer protection law, she is not completely without a remedy. She could still sue Air Evac under a breach of contract or promissory estoppel theory, presuming her exchanges with Air Evac rose to the level of a contract or an enforceable promise and there was a

breach, *ATA Airlines, Inc. v. Federal Exp. Corp.*, **665 F.3d 882, 884 (7th Cir. 2011)**, and to the extent she is convinced that Air Evac's plan is deceptive, she can likely complain to the Department of Transportation about Air Evac's practices, *Ginsberg*, **134 S. Ct. at 1433**. What she can't do is use consumer law to work a change on an airline's membership plan that is related to fares—that type of claim would port in patchwork consumer protection principles from 50 states into membership plans, making the kind of "mess of things" that the Act sought to avoid. *Cf. Mesa Airlines*, **219 F.3d at 611.**

For the reasons stated above, the Court **GRANTS** Air Evac's motion for summary judgment (Doc. 14) as to Concovich's Illinois Consumer Fraud and Deceptive Trade Practices Act claim. Because Concovich's complaint raises only an Illinois consumer claim and not a breach of contract claim, there's nothing left to do in this case. The Clerk is **DIRECTED** to enter judgment in favor of Air Evac and against Concovich.

**IT IS SO ORDERED.**

DATED: March 4, 2016

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**